UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GRI-TAYLOR LLC,

Plaintiff,

Case No. 2:24-cv-10407

v.

Honorable Susan K. DeClercq
United States District Judge

CITY OF TAYLOR, et al.,

Defendants.
______________________________/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S EXPERTS (ECF No. 44); DENYING PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER (ECF No. 48); GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO EXCLUDE FIRE CHIEF PORTIS (ECF No. 50); AND DENYING AS MOOT DEFENDANTS' MOTION TO EXCLUDE KEVIN CHRISTIANSEN (ECF No. 52)**

Four motions concerning expert testimony and belated discovery are before this Court. Plaintiff GRI-Taylor, Inc. ("GRI") moves for a protective order concerning Defendant City of Taylor's ("the City") subpoena to a third party, and moves to exclude the City's expert Fire Chief Stephen Portis. The City moves to strike all of GRI's experts, and to exclude testimony from GRI expert Kevin Christiansen. For the reasons explained below, this Court will deny the motion for protective order, grant in part and deny in part both GRI's motion to exclude Portis and the City's motion to strike, and deny as moot the City's motion to exclude Christiansen.

## I. BACKGROUND

GRI brought this action over the City's review of its proposed use of property at 6900 Pardee Road (the "Property"). *See generally* ECF No. 1-1. According to the Complaint, the Property had been used for a landscape business, and GRI proposed to continue that use without expanding its three existing buildings. *Id.* at PageID.9. GRI submitted a site plan before acquiring the Property. *Id.* The City's Administrative Review Committee reviewed it in August 2022 and commented that the "water main must be looped." *Id.* (capitalization omitted). The proposed loop would extend GRI's water line to connect with an existing line in a neighboring residential area. *Id.* at PageID.7. GRI alleges that the City required it to pay for that extension and grant an easement as a condition of site-plan approval. *Id.* at PageID.7, 9–11.

Both Parties intend to present expert testimony about whether the loop was required to provide adequate fire flow. This Court initially ordered expert discovery to proceed as follows: The Parties were to exchange expert disclosures by January 3, 2025. ECF No. 25. Expert reports were due "5 days prior to deposition," and expert discovery would close on February 28, 2025. *Id.* This Court extended expert discovery several times, *see, e.g.*, ECF No. 38, and discovery ultimately closed on October 17, 2025, ECF No. 40.

Relevant today, GRI hired (1) Justin Sprague, a municipal planning expert, to address the classification of its proposed use; and (2) Exxel Engineering to address engineering and construction costs associated with the loop. ECF No. 37 at PageID.210–11. GRI also included the proposed Exxel Engineering witnesses on a lay witness list. ECF No. 36. The City disclosed that Fire Chief Stephen Portis would testify as an expert about the City's and the Property's fire-flow requirements "and whether the Property would need to have the water main to be looped for it to meet the fire flow requirements." ECF No. 26 at PageID.155. The Parties' initial expert disclosures did not set out the experts' opinions or the bases for those opinions. *See* ECF Nos. 26; 37.

**A. Sprague and Christiansen**

On September 29, 2025, Sprague discovered a conflict of interest that would prevent him from serving as GRI's expert. ECF No. 46-2 at PageID.269–70. He informed GRI of the conflict on September 30, 2025. *Id.* GRI says it told the City on October 7, 2025, that it expected to replace one of its experts. ECF No. 46 at PageID.255. The City acknowledges the conversation but says GRI did not then identify a replacement. ECF No. 44 at PageID.226 n.2. On October 16, 2025—the day before expert discovery closed—GRI served its second supplemental expert disclosure. ECF No. 42. It substituted Christiansen for Sprague as a proposed

municipal-planning and zoning-administration expert, describing the same general subject of Property and use classification. *Id.*

GRI did not produce a Civil Rule 26(a)(2)(B) report from Sprague or Christiansen before the expert-discovery cutoff. ECF Nos. 44 at PageID.226; 58 at PageID.4253. Nor was either expert deposed.[1] ECF Nos. 44 at PageID.225; 52 at PageID.515–18.

**B. Exxel Engineering**

On November 3, 2025—after fact and expert discovery closed—GRI removed the Exxel witnesses from its expert disclosure. ECF No. 45 at PageID.247–48. That day, the City issued a document subpoena to Exxel. ECF No. 48 at PageID.288. According to the City, Exxel responded without objection and the City supplied GRI with copies of the documents received. ECF No. 49 at PageID.303–05.

GRI did not produce a Civil Rule 26(a)(2)(B) report from any Exxel witness before the expert-discovery cutoff. ECF No. 44 at PageID.226. And no Exxel witness has been deposed. ECF Nos. 44 at PageID.230; 52 at PageID.515–18.

[1] The City repeatedly requested expert reports and deposition dates of GRI's witnesses. ECF No. 44 at PageID.225; ECF No. 49 at PageID.302. The City did not attach every request it describes, ECF No. 44 at PageID.226 n.1, but GRI does not appear to contest the requests, *see generally* ECF No. 46.

### C. Portis

Portis has more than thirty years of service in the City's fire department and is certified as a fire inspector. ECF No. 50-1 at PageID.337, 369. Portis testified that his work involves fire inspections, fire-suppression concerns, and such matters as sprinkler systems and hazardous-material storage. *Id.* at PageID.369–73, 421–22. He explained that when inspecting a Property, he is reviewing fire flow, hydrant access, main size, dead-end hydrants, and looping. *Id.* at PageID.385–86.

Portis distinguished those operational concerns from the engineering determinations concerning this Property. *See* ECF No. 50-1 at PageID.389–90. He testified about his expertise as follows: he has no specialized training in water-distribution hydraulics or engineering; had not thoroughly reviewed the City's Water Distribution System Master Plan; had not seen its Engineering Standards Manual; and does not conduct hydrant-flow tests, though he may witness tests performed by others. *Id.* at PageID.387, 389–91; ECF No. 50 at PageID.316–17. He said that he defers questions about underground systems, water-main sizing, and looping to engineers. *Id.* at PageID.386–88, 421–22, 444. When asked about a hydrant-test graph, he said he could not interpret the graph or explain the result without consulting those who performed the test. *Id.* at PageID.410–14. And when asked whether the fire flow at the Property was sufficient, he again deferred the determination to engineers. *Id.* at PageID.421.

## II. LEGAL STANDARD

Federal Evidence Rule 702 governs the admissibility of expert testimony. It permits "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" to testify if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702.

The rule commands that district courts play a "gatekeeping role" by screening out unsupported, unreliable, and speculative expert opinions. *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 668 (6th Cir. 2010) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)).

Experience may qualify a witness as an expert, but that experience must provide a foundation for the particular opinions offered. *See Bradley v. Ameristep, Inc.*, 800 F.3d 205, 209 (6th Cir. 2015) (explaining that whether experience qualifies an expert to opine on a particular subject depends on the nature and extent of that experience); *see also Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994) ("The issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to

answer a specific question.”). Thus, a witness may offer expert testimony based principally on professional experience. *See First Tenn. Bank Nat'l Ass'n v. Barreto*, 268 F.3d 319, 334–35 (6th Cir. 2001). But the witness must explain how that experience leads to the conclusion reached, why it provides a sufficient basis for the opinion, and how the witness's experience was reliably applied to the facts. *Surles v. Greyhound Lines, Inc.*, 474 F.3d 288, 295 (6th Cir. 2007).

Procedurally, a party offering a retained expert must provide a report stating the opinions the witness will express, the bases and reasons for them, and the facts or data considered. FED. R. CIV. P. 26(a)(2)(B). A party that fails to make the required disclosure may not use the witness “on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless.” FED. R. CIV. P. 37(c)(1). To decide whether either exception applies, courts consider “(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.” *Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015) (citation omitted).

## III. DISCUSSION

### A. GRI's Proposed Experts

The City seeks to strike all of GRI's experts based on the lack of expert reports and depositions, ECF No. 44, and to exclude any testimony from Christiansen, ECF No. 52. GRI responds that Sprague's conflict explains the late substitution, that a short extension would cure any prejudice, and that Exxel personnel can still testify as lay witnesses. ECF Nos. 46, 58. As explained below, this Court will exclude Christiansen's expert testimony under Civil Rules 26 and 37, declines to issue a freestanding ruling about withdrawn experts, and will limit Exxel testimony.

*1. Christiansen*

As discussed above, GRI identified Christiansen as Sprague's replacement on October 16, 2025, one day before expert discovery closed. ECF No. 42 at PageID.219; ECF No. 40. The City moves to strike Christiansen for failing to provide reports or appear for depositions and separately moves to exclude him for failure to provide a report setting out his opinions and their bases before expert discovery closed. ECF Nos. 44; 52. GRI responds that it identified Christiansen promptly after Sprague disclosed a conflict, that the scheduling order required his report five days before a deposition, and that a 30-day extension would permit both the report and deposition. ECF Nos. 46 at PageID.255–61; 58 at PageID.4252–55.

Here, this Court required expert reports five days before deposition, ECF No. 25, and required expert discovery to be completed by October 17. ECF No. 40. Read together, those deadlines required GRI to provide the report in time for a deposition within the expert-discovery period. Extending that period requires good cause and this Court's consent. FED. R. CIV. P. 16(b)(4).

Nor can GRI rely on its earlier expert disclosures. Identifying an expert and the general subjects of his testimony does not satisfy Rule 26(a)(2)(B). *R.J. Control Consultants, Inc. v. Multiject, LLC*, 100 F.4th 659, 668–71 (6th Cir. 2024) (affirming exclusion where the plaintiffs identified their expert and his anticipated subjects but never disclosed his opinions or their bases, leaving the defendants unable to prepare for or depose him). GRI likewise identified Christiansen as a planning-and-zoning expert without disclosing his opinions, their bases, or the facts and data he considered. The Court therefore considers whether that failure was substantially justified or harmless under Rule 37(c)(1) and the *Howe* factors. 801 F.3d at 748.

The *Howe* factors confirm that GRI's failure was neither substantially justified nor harmless. First, the late disclosure created substantial surprise. *See id.* Although the City knew that GRI intended to offer planning-and-zoning expert testimony, it did not know Christiansen's actual opinions, the bases for those opinions, or the facts and data on which he relied. Nor did the City have an opportunity to depose Christiansen before expert discovery closed. *See R.J. Control*,

100 F.4th at 668 (concluding that an expert's testimony would have been a "complete surprise" where the opposing party had not received his report or had an opportunity to depose him). Indeed, it has been nearly a year since the close of expert discovery, and as far as this Court can tell, GRI *still* has not produced an expert report from Christiansen.[2]

Second, the City could cure that surprise only if the Court reopened expert discovery. *See Howe*, 801 F.3d at 748. Doing so would require GRI to produce Christiansen's report and would then require the City to analyze it, depose Christiansen, and, if necessary, obtain responsive expert evidence. *See R.J. Control*, 100 F.4th at 668–69 (recognizing that reopening discovery may be the only meaningful cure in precisely these circumstances, and that a district court is not required to provide that cure).

Third, reopening discovery would disrupt the orderly resolution of this case. *See Howe*, 801 F.3d at 748. Expert discovery has closed, and the Parties have already filed summary-judgment motions. *See* ECF Nos. 53; 54; 55. Allowing GRI to develop expert evidence now would require a new period of expert discovery and

---

[2] Of course, GRI was not required to attach Christiansen's report to its request for an extension. But GRI requested only 30 additional days to produce the report *and* complete his deposition, ECF No. 46 at PageID.257–58. And GRI has neither produced any report to the City in the eleven months since expert discovery closed nor advised this Court that a report was even completed. That makes the proposed short extension a less persuasive cure for the City's surprise.

potentially supplemental motion practice, shifting to the City the time and expense necessary to cure GRI's nondisclosure. *See R.J. Control*, 100 F.4th at 669 (reasoning that reopening discovery would reward the nondisclosing party while requiring the opposing party to bear the effort and expense of curing the failure).

Fourth, Christiansen's proposed testimony is likely important to GRI's case.[3] *See Howe*, 801 F.3d at 748. But that factor "can cut both ways." *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 220 (6th Cir. 2019) (citation omitted). Indeed, "[t]he more important the proof, the greater the effect of preclusion, but also the greater the harm in tardy disclosure." *Id.* (citation omitted); *see also R.J. Control*, 100 F.4th at 670. Thus, the importance of Christiansen's testimony does not render GRI's failure harmless. *See Howe*, 801 F.3d at 748.

Finally, GRI's explanation does not substantially justify its nondisclosure. *See id.* Sprague's conflict of interest explains why GRI ultimately needed a replacement expert, but it does not explain why GRI had not produced Sprague's report or made

[3] Analyzing this factor is difficult, given that Sprague's expert disclosure describes him broadly as "an expert on municipal planning and zoning administration and, if called to testify, will testify on topics including, but not limited to, the proper classification of Plaintiff's property and use for zoning purposes." ECF No. 46-1 at PageID.265–66. Although GRI describes Christiansen as testifying to the same topics as Sprague, "central to the claims asserted by Plaintiff" and "important to help the fact finder understand the complex planning, zoning, and municipal permitting processes at issue in this matter," ECF No. 46 at PageID.258–59, GRI does not expound any further on Christiansen's role or the necessity of his testimony.

him available for deposition during the preceding months despite the City's repeated requests. Nor does it explain why, after learning of the conflict, GRI did not identify Christiansen until October 16—the day before expert discovery closed.[4]

Considering the five *Howe* factors together, GRI has not shown that its failure to comply with Rule 26 was substantially justified or harmless, nor shown good cause to reopen expert discovery. *See id.* Therefore, the City's motion to strike, ECF No. 44, will be granted as to his expert testimony. Christiansen may not supply expert evidence at summary judgment or trial.[5]

*2. Withdrawn Experts*

GRI withdrew its expert designations for David Burgoyne, Justin Sprague, and the Exxel witnesses in its November 3, 2025 supplemental disclosure. ECF No. 45 at PageID.247–48. The City's motion to exclude expert testimony from those withdrawn witnesses is therefore denied as moot. This ruling does not authorize GRI to revive any withdrawn expert designation without further order. Whether Exxel personnel may testify as fact witnesses is addressed below.

---

[4] Indeed, October 12 was the latest date on which Christiansen's report could have been served while still permitting his deposition to occur within the expert-discovery period. The October 16 disclosure was plainly untimely.

[5] The City separately moves to exclude Christiansen under Evidence Rule 702. ECF No. 52. It argues that, without a report or deposition, the Court cannot assess his qualifications or the reliability of his proposed opinions. *Id.* at PageID.519–20. Because this Court has excluded his testimony under Civil Rule 37(c)(1), it need not reach the Rule 702 challenge. The separate motion is therefore denied as moot.

*3. Exxel Engineering Witnesses*

Finally, the City seeks to preclude Exxel Engineering personnel from testifying at trial, arguing that GRI designated them as experts throughout discovery but provided neither reports nor deposition dates, and then withdrew their expert designation after discovery closed. ECF No. 44 at PageID.225–29, 237–38. GRI responds that it also identified them as lay witnesses in March 2025 and that the City could have deposed them in that capacity. ECF No. 46 at PageID.254–55, 260–61. This Court will not categorically bar Exxel personnel from testifying about facts within their personal knowledge. But GRI may not elicit undisclosed expert opinions from them under a lay-witness label. *See* FED. R. EVID. 602, 701.

A witness with relevant firsthand knowledge does not become an expert merely because he possesses technical training or experience. *See United States v. White*, 492 F.3d 380, 401 (6th Cir. 2007). So GRI may not evade Civil Rule 26 and Evidence Rule 702 by offering expert testimony through lay witnesses.[6] Evidence Rule 701 permits lay opinion testimony only when it is rationally based on the witness's perception, helpful to understanding that testimony or determining a fact in issue, and not based on specialized knowledge within Evidence Rule 702. FED. R.

---

[6] The City emphasizes that GRI never produced expert reports from the Exxel witnesses and never made them available for deposition. ECF No. 44 at PageID.226–28. However, GRI has withdrawn its expert designations and represents that it intends to call them only as lay witnesses. ECF No. 46 at PageID.259–60.

EVID. 701. Technical training does not erase firsthand knowledge, and, equally, the lay label cannot excuse missing expert disclosures. *See White*, 492 F.3d at 401; *see also JGR, Inc. v. Thomasville Furniture Indus., Inc.*, 370 F.3d 519, 525–26 (6th Cir. 2004).

Accordingly, the Exxel witnesses may testify to their personal knowledge, such as work they performed, communications in which they participated, documents they prepared or received, and observations they made during the project. They may not, however, offer *opinions* that depend on engineering principles, professional standards, specialized technical analysis, or other knowledge within Evidence Rule 702. The City's motion will therefore be granted to that extent and denied to the extent it seeks to exclude the Exxel witnesses altogether.

Finally, the City's motion will be denied as moot as to the witnesses GRI has withdrawn, David Burgoyne and Justin Sprague. Because GRI does not seek to present expert testimony from either witness, there is no expert testimony from them for the Court to exclude.

**B. GRI's Motion for a Protective Order (ECF No. 48)**

GRI asks this Court to quash the City's post-discovery subpoena to Exxel Engineering and to preclude the City from using any documents obtained through

it,[7] arguing that the subpoena circumvented this Court's scheduling order. ECF No. 48 at PageID.288–91. The City responds that GRI lacks standing to assert Exxel's interests, has shown no good cause warranting a protective order, and that the subpoena became necessary because of the uncertainty surrounding GRI's treatment of the Exxel witnesses. ECF No. 49 at PageID.302–07.

Civil Rule 26(c)(1) permits a court, for good cause, to issue a protective order protecting a party or person from "annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1). "The burden of establishing good cause for a protective order rests with the movant." *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001) (per curiam). To demonstrate good cause, the movant "must articulate specific facts showing clearly defined and serious injury resulting from the discovery sought and cannot rely on mere conclusory statements." *Id.* (internal quotation marks and citation omitted). Civil Rule 45 governs subpoenas, including subpoenas for documents from nonparties. FED. R. CIV. P. 45(a)(1)(A)(iii). But because a subpoena is a discovery device, it remains subject to the deadlines imposed by the court's scheduling order. *See Ghandi v. Police Dep't of Detroit*, 747 F.2d 338, 354–55 (6th Cir. 1984). Once those deadlines expired, additional discovery required

[7] Exxel appears to have complied with the subpoena in full and without objection and produced the requested documents before this motion was decided. *See* ECF No. 49 at PageID.305.

modification of the scheduling order upon a showing of good cause. FED. R. CIV. P. 16(b)(4).

Here, the City's November 3, 2025, subpoena was untimely. The final Scheduling Order closed fact discovery on September 12 and expert discovery on October 17, and the City neither sought leave to reopen discovery nor obtained GRI's agreement before serving the subpoena. ECF No. 48 at PageID.289–90. The City's explanation—that GRI's shifting description of the Exxel witnesses left it unable to obtain their documents during discovery, ECF No. 49 at PageID.302-05—does not authorize it to unilaterally extend discovery. FED. R. CIV. P. 16(b)(4).

However, to the extent GRI seeks an order preventing Exxel from complying with the subpoena, neither party has standing to request this Court to do so. *See United States v. Wells*, No. 06-10589, 2006 WL 3203905, at *2 (E.D. Mich. Nov. 3, 2006) (explaining that a party ordinarily lacks standing to quash a subpoena directed to a nonparty absent a personal right or privilege in the requested materials). GRI has not identified a personal right or privilege that would give it standing to quash the subpoena. Because GRI also seeks a protective order, this Court considers whether it has shown good cause for relief under Civil Rule 26(c). *See Underwood v. Riverview of Ann Arbor*, No. 08-11024, 2008 WL 5235992, at *1–2 (E.D. Mich. Dec. 15, 2008).

GRI argues that use of these documents obtained from the subpoena would prejudice it. ECF No. 51 at PageID.504–05. A document subpoena served after discovery closes may prejudice another party, depending on the material sought and that party's opportunity to address it. *See Buhrmaster v. Overnite Transp. Co.*, 61 F.3d 461, 464 (6th Cir. 1995) (affirming an order quashing a subpoena used to seek material after the discovery deadline); *see also AFT Mich. v. Project Veritas*, No. 17-13292, 2022 WL 779784, at *2 (E.D. Mich. Mar. 14, 2022) (considering possible prejudice in allowing discovery by subpoena after the deadline). But an order restricting use can still afford effective relief even after production. *See Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992). This Court finds that the City's failure to seek leave is not excusable, but finds that the circumstances weigh against the "harsh remedy of exclusion" for documents already produced by Exxel, provided they are otherwise admissible. *Bisig*, 940 F.3d at 219 (explaining that the Civil Rule 37(c)(1) inquiry distinguishes harmless mistakes from the "underhanded gamesmanship" that warrants the "harsh remedy of exclusion").

Nor do the authorities on which GRI relies *necessarily* compel exclusion. *Ghandi* supports only the proposition that Civil Rule 45 subpoenas are subject to discovery deadlines and may be quashed when served after those deadlines. 747 F.2d at 354–55. And *Miami Valley Fair Housing Center, Inc. v. Connor Group* held that a party could not proceed with a post-deadline deposition without leave of court.

No. 3:10-cv-00083, 2011 WL 13157347, at *2–3 (S.D. Ohio July 21, 2011). Those cases support enforcement of discovery deadlines but do not establish that documents already produced without objection *must* be suppressed as a consequence of the violation.

This Court therefore declines to exclude the documents. The scheduling order violation does not invariably require exclusion of the evidence belatedly obtained or disclosed. Civil Rule 16(f) instead authorizes the court to impose such orders as are "just" under the circumstances. FED. R. CIV. P. 16(f)(1)(C); *see Hensley v. Bossio*, No. 23-5606, 2024 WL 2799261, at *5–6 (6th Cir. May 31, 2024) (affirming admission of evidence disclosed in violation of scheduling orders where exclusion was not warranted by the resulting prejudice). Here, although the City should have sought leave before issuing the subpoena, Exxel voluntarily produced the documents without objection, the production implicates no privilege or confidentiality interest asserted by GRI, and the City's need for the materials arose against the unusual backdrop of GRI's treatment of the Exxel witnesses as both lay and expert witnesses before proceeding on a lay-only theory. Those circumstances do not excuse the City's violation, but they make exclusion of otherwise admissible evidence an unnecessarily severe remedy. Thus, the City may use the documents already produced, subject to the Federal Rules of Evidence, but may not pursue additional discovery from Exxel or any other entity without further leave of this Court.

Accordingly, GRI's request to quash the subpoena will be denied as moot, and its request to preclude use of the resulting production is denied.

**C. GRI's Motion to Exclude Portis (ECF No. 50)**

GRI moves to exclude Portis's expert testimony under Evidence Rule 702. ECF No. 50. The City disclosed Portis to address its fire-flow requirements, the flow required at the Property, and whether looping the water main is necessary to meet those requirements. ECF No. 26 at PageID.155. GRI argues that the last two subjects require interpreting hydrant-flow tests and assessing the Property's water-distribution system—work Portis testified he leaves to engineers. ECF No. 50 at PageID.319–22. GRI points to his testimony that he does not perform flow tests, could not interpret the test results presented to him, and—particularly relevant here—that he would routinely defer to engineers on whether the Property's flow is sufficient and whether looping is needed. *Id.* at PageID.316–18, 320–21; ECF No. 62 at PageID.6680–83. The City responds that Portis's more than 30 years in the fire service and his fire-inspector certification qualify him to explain fire-flow requirements and the operational concerns posed by dead-end hydrants. ECF No. 57 at PageID.4015. The City maintains that those opinions would help the factfinder understand why adequate flow and looping matter, and that GRI's criticisms go to the weight of his testimony. *Id.* at PageID.4011–12, 4017–19.

This Court finds that the Parties frame the issue too broadly. Portis's lack of engineering expertise does not disqualify him from all fire-safety testimony, but his general fire-service experience also does not itself provide a reliable basis for property-specific hydraulic or engineering opinions. *See Berry*, 25 F.3d at 1351.

Portis has substantial experience in fire-department operations. He has worked for the Taylor Fire Department for more than 30 years; is a certified fire inspector; and testified that his duties and experience include fire-flow concerns, hydrant access, main size, dead-end hydrants, and looping. ECF No. 50-1 at PageID.337, 369–73, 421–22. That experience qualifies Portis to explain fire-department operations and the fire-safety considerations associated with water supply, hydrant access, and dead-end hydrants. *See* FED. R. EVID. 702; *see also Bradley*, 800 F.3d at 208–09.

The City seeks, however, to have Portis testify more broadly. Its disclosure stated that he would testify regarding the City's fire-flow requirements, the Property's fire-flow requirements, and whether the Property's water main would need to be looped to satisfy those requirements. *See* ECF Nos. 50 at PageID.315; 26 at PageID.155. Portis's testimony demonstrates that his expertise does not extend that far. He has no specialized training or experience in water-distribution hydraulics or engineering, had not thoroughly reviewed the City's Water Distribution System Master Plan, had never seen the City's Engineering Standards Manual, does not

perform hydrant-flow tests, and defers engineering and looping determinations to engineers. ECF No. 50-1 at PageID.369, 385–91. Those limitations bear directly on the specific technical opinions the City disclosed. *See Berry*, 25 F.3d at 1351.

Nor does Portis identify any hydraulic methodology or other technical method that he applied to the Property-specific flow data. Thus, although Portis's experience may qualify him to testify about fire-department operations and general fire-safety considerations, the City has not established that he is qualified to interpret the hydrant-flow tests, determine whether the Property satisfies a particular technical flow standard, calculate the effect of a proposed loop, or opine that a particular loop is technically necessary. *See id.*

GRI's motion will therefore be granted in part and denied in part. Portis may, of course, testify as a fact witness concerning matters within his personal knowledge and participation in the City's review. He may also offer expert testimony concerning fire-department operations and general fire-safety considerations within the scope of his training and experience, including why adequate fire flow, hydrant access, and the avoidance of dead-end hydrants may matter from a fire-suppression perspective. But he may not interpret the Property's hydrant-flow test results, determine whether the Property satisfies a particular engineering or hydraulic flow requirement, calculate or predict the hydraulic effect of looping the water main, or opine that a particular loop was technically required to achieve a specified flow.

## IV. CONCLUSION

Accordingly, it is **ORDERED** that Defendant's Motion to Strike Plaintiff's Experts, ECF No. 44, is **GRANTED IN PART and DENIED IN PART** as set forth above.

Further, it is **ORDERED** that Defendant's Motion to Exclude Expert Witness Testimony and Expert Report(s), ECF No. 52, is **DENIED AS MOOT**.

Further, it is **ORDERED** that Plaintiff's Motion for a Protective Order, ECF No. 48, is **DENIED AS MOOT** insofar as it seeks to quash the completed subpoena, and is **otherwise DENIED**.

Further, it is **ORDERED** that Plaintiff's Motion in Limine to Exclude Fire Chief Stephen Douglas Portis' Testimony as an Expert Witness, ECF No. 50, is **GRANTED IN PART and DENIED IN PART**.

*/s/Susan K. DeClercq*
SUSAN K. DeCLERCQ
United States District Judge

Dated: September 30, 2026